UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| JOSEPH T. ARQUILLO, Personal Representative of the ESTATE OF JOSEPH R. ARQUILLO, | Case No.: 1:20 CV 1201 |
| Plaintiff | JUDGE SOLOMON OLIVER, JR. |
| v. | |
| CUYAHOGA COUNTY/CUYAHOGA COUNTY BOARD OF COMMISSIONERS, *et al.*, | |
| Defendants | <u>ORDER</u> |

Currently pending before the court in the above-captioned case are Defendant Kenneth Mills's ("Mills") Motion to Dismiss ("Mills's Motion") (ECF No. 23); Defendant MetroHealth System's ("MetroHealth") Motion for Judgment on the Pleadings ("MetroHealth's Motion") (ECF No. 25); Defendants Cuyahoga County/County Board of Commissioners[1] ("Cuyahoga County"), Armond Budish, George Taylor, Earl Leiken, and Clifford Pinkney's Motion for Partial Judgment on the Pleadings (the "County's Motion") (ECF No. 37); and Defendant Eric Ivey's Motion for Judgment on the Pleadings ("Ivey's Motion") (ECF No. 42). For the reasons that follow,

---

[1] In its Motion, the County moved for dismissal of all claims asserted against the Cuyahoga County Board of Commissioners, asserting that these claims should be dismissed because that entity does not exist. (County's Mem. in Supp. at PageID #629, ECF No. 37.) In Plaintiff's Opposition to the Motion, Plaintiff concedes to the dismissal of the County Board of Commissioners as it is a non-existent entity that does not have the capacity to sue or be sued. (Pl.'s Opp'n at PageID #668 n.2, ECF No. 39.) Consequently, the court hereby dismisses the claims asserted against the County Board of Commissioners.

the court grants Defendant Mills's Motion to Dismiss (ECF No. 23), and hereby dismisses Plaintiff's claims asserted against Mills in his individual capacity; grants Defendant MetroHealth's Motion (ECF No. 25), and hereby dismisses Plaintiff's claims asserted against MetroHealth as well as any agents or employees of MetroHealth in their individual or official capacities; grants the County's Motion (ECF No. 37), and hereby dismisses the following claims: (1) Plaintiff's official capacity claims against the individual County Defendants; (2) Plaintiff's federal claims in Counts IV, V, VI, VII, to the extent that such claims are based on the alleged constitutional violations of Defendants Budish, Taylor, Leiken, Pinkney, Ivey, or Mills (collectively, the "Policy Defendants"); and (3) Plaintiff's state law claims in Counts II, III, IX, X, XI, XII, XIII, XIV, XV, and XVII, to the extent that these claims are asserted against the County or the Policy Defendants; and grants Defendant Ivey's Motion (ECF No. 42), and hereby dismisses Plaintiff's claims asserted against Ivey in his individual capacity.

Plaintiff has requested leave to amend his Complaint should the court find that his claims should be dismissed.[2] The court finds that there has not been undue delay or bad faith by the Plaintiff and that certain amendments of the Complaint would not be futile. *See* Fed. R. Civ. P. 15(a)(2). Consequently, the court grants Plaintiff leave to amend pursuant to Federal Rule of Civil Procedure 15(a)(2). In the event that Plaintiff is desirous of filing an amended complaint, he must do so within fourteen (14) days of the date of this Order.

## I. BACKGROUND

---

[2] In his Opposition to the Motion, Plaintiff requests the opportunity to amend his Complaint in the event that the court determines that his factual allegations are insufficient to state a claim. (Pl.'s Opp'n to County Defs.' Mot. at PageID #695 n.79, ECF No. 39.)

**A.      Factual Background**

This case centers around Joseph R. Arquillo's ("Arquillo" or the "decedent") death from a drug overdose while he was incarcerated as a pretrial detainee at the Cuyahoga County Corrections Center (the "County Jail"). On or about August 27, 2018, Arquillo was admitted to the County Jail at approximately 3:00 a.m. (Compl. ¶¶ 19–20, ECF No. 1-1.) Upon his admission to the facility, Arquillo received a medical screening by "an agent, servant, or employee" of Defendant MetroHealth. (*Id*. ¶ 21.) At approximately 9:00 a.m. that same morning, Arquillo laid on a mat in the common area, and it is alleged that Defendant Martin Devring ("Devring")—who was a corrections officer at the County Jail—had some interaction with Arquillo around 9:15 a.m. (*Id*. ¶¶ 22–23.) At approximately 10:15 a.m., Arquillo hunched his body over the floor with his head toward the ground. (*Id*. ¶ 27.) At approximately 11:35 a.m., Defendant Devring kicked the mat that Arquillo was laying on and walked away. (*Id*. ¶ 25.) Arquillo remained motionless, and Defendant Devring did not call for medical assistance or attempt to evaluate Arquillo's medical condition at that time. (*Id*. ¶¶ 26–27.) At approximately 12:52 p.m., two inmates summoned a corrections officer for help after noticing that Arquillo was lying motionless on the mat. (*Id*. ¶ 29.) That corrections officer called for medical assistance and initiated CPR until medical staff arrived. (*Id*. ¶ 30.) Arquillo was then transported to MetroHealth Hospital, where he was pronounced dead. (*Id*. ¶ 31.) An autopsy later revealed that Arquillo died with heroin, fentanyl, acetyl fentanyl, and alprazolam in his system, and as such, his death was deemed a drug overdose.[3] (*Id*. ¶¶ 32–33.)

---

[3]     According to the Complaint, Defendant Devring falsified County Jail records after the decedent's death to indicate that he properly performed inspections of all inmates every fifteen (15) minutes on the day that Arquillo died. (*Id*. ¶ 34.) Additionally, Plaintiff alleges that Defendant Ivey, who was the Warden of the Jail at that time, ordered several corrections officers to turn off their body cameras

-3-

**B.     Procedural History**

On May 12, 2020, Plaintiff Joseph T. Arquillo, as personal representative of the decedent's estate, filed his Complaint in the Cuyahoga County Court of Common Pleas. The case was removed to this court on June 1, 2020. (ECF No. 1.) In the Complaint, Plaintiffs assert eighteen (18) claims for relief against the County, County Executive, Armond Budish, former Chief of Staff to the County Executive, Earl Leiken, former Interim Director of the County Jail, George Taylor, former County Sheriff, Clifford Pinkney, former Warden of the County Jail, Eric Ivey, former Director of the County Jail, Kenneth Mills, former Corrections Officer, Martin Devring, MetroHealth, and five (5) unnamed John/Jane Doe Defendants.

On September 14, 2020, Defendant Mills filed a Motion to Dismiss (ECF No. 23), asserting that Plaintiff's claims against him in his *individual capacity* should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6) because Plaintiff failed to plead any facts showing that Defendant Mills was personally involved in the conduct that led to Plaintiff's death. (Def. Mills's Mem. in Supp. at PageID #486, ECF No. 23-1.) On November 4, 2020, Plaintiff filed an Opposition to Defendant Mills's Motion (ECF No. 33) to which Mills replied on November 18, 2020 (ECF No. 38).

On September 28, 2020, Defendant MetroHealth filed a Motion for Judgment on the Pleadings (ECF No. 25) pursuant to Rule 12(c), asserting that Plaintiff's federal claims against MetroHealth fail as a matter of law and that MetroHealth is entitled to statutory immunity from Plaintiff's state law claims. (Def. MetroHealth's Mem. in Supp. at PageID #516, ECF No. 25-1.) On

---

> during the investigation of Arquillo's death. (*Id*. ¶ 44.) Both Defendants Devring and Ivey were charged in connection with their conduct described above.

October 28, 2020, Plaintiff filed an Opposition to Defendant MetroHealth's Motion (ECF No. 31) to which MetroHealth replied on November 4, 2020 (ECF No. 32).

On November 16, 2020, Defendants Cuyahoga County, Armond Budish, George Taylor, and Clifford Pinkney filed a Motion for Partial Judgment on the Pleadings pursuant to Rule 12(c), arguing that the claims brought against these Defendants fail as a matter of law. Additionally, the County Defendants argue that the individual County Defendants are entitled to qualified immunity from Plaintiff's federal claims and that the County, as well as the individual County Defendants are entitled to statutory immunity from Plaintiff's state law claims. (ECF No. 37.) On December 16, 2020, Plaintiff filed an Opposition to the County Defendants' Motion (ECF No. 39) to which the County replied on December 30, 2020 (ECF No. 40). On January 25, 2021, the County filed a Supplement to the Motion to clarify that the County's Motion was filed on behalf of: (1) the County; (2) the Executive Defendants in their individual and official capacities; and (3) Defendants Ivey, Mills, and Devring, in their official capacities only. (County Defs.' Supp. at PageID #781, ECF No. 44.)

Lastly, on January 21, 2021, Defendant Eric Ivey filed a Motion for Judgment on the Pleadings (ECF No. 42) pursuant to Rule 12(c), asserting that Plaintiff's claims against him in his *individual capacity* should be dismissed because they fail as a matter of law and that he is entitled to immunity from Plaintiff's claims. (ECF No. 42.) On February 19, 2021, Plaintiff filed an Opposition to Defendant Ivey's Motion (ECF No. 46) to which Ivey replied (ECF No. 47) on March 5, 2021.

## II. LEGAL STANDARD

**A.    Federal Rule of Civil Procedure 12(b)(6)**

The court examines the legal sufficiency of a plaintiff's claims under Federal Rule of Civil Procedure 12(b)(6). The United States Supreme Court clarified the law regarding what a plaintiff must plead in order to survive a motion made pursuant to Rule 12(b)(6) in *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). When determining whether the plaintiff has stated a claim upon which relief can be granted, the court must construe the complaint in the light most favorable to the plaintiff, accept all factual allegations as true, and determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. The plaintiff's obligation "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555. Even though a complaint need not contain "detailed" factual allegations, its "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the Complaint are true." *Id.* A court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286 (1986).

**B.     Federal Rule of Civil Procedure 12(c)**

Under Federal Rule of Civil Procedure 12(c), a party may move for judgment on the pleadings "[a]fter the pleadings are closed - but early enough not to delay trial." The standard for evaluating a motion for judgment on the pleadings is identical to the standard a court applies to a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). *Ziegler v. IBP Hog Mkt., Inc.*, 249 F.3d 509, 511–12 (6th Cir. 2001); *Tinney v. Richland Cnty.*, No. 1:14-CV-703, 2015 WL 542415, at *3 (N.D. Ohio Feb. 10, 2015). The court examines the pleadings of the parties and evaluates the legal sufficiency of the plaintiff's claim. *Id.*; *see also Mayer v. Mulod*, 988 F.2d 635, 638 (6th Cir. 1993).

### III. LAW AND ANALYSIS

**A.     Federal Claims**

<u>1. Official Capacity Claims</u>

Defendants argue that the official capacity claims asserted against the individual County Defendants should be dismissed because they are redundant in light of the fact that Plaintiff has also sued their employer, the County. It is well settled that a "section 1983 action against a city official in his or her official capacity is treated as an action against the City entity itself." *Shamaeizadeh v. Cunigan*, 338 F.3d 535, 556 (6th Cir. 2003) (citing *Barber v. City of Salem*, 953 F.2d 232, 237 (6th Cir. 1992)). And the Sixth Circuit has made clear that "[w]here the entity is named as a defendant, an official-capacity claim is redundant." *See Foster v. Michigan*, 573 F. App'x 377, 390 (6th Cir. 2014) (citing *Faith Baptist Church v. Waterford Twp.*, 522 F. App'x. 322, 327 (6th Cir.2013)). Because there is no dispute that dismissal of Plaintiff's official capacity claims is permitted but not required, the court finds that dismissal is appropriate in light of the fact that Plaintiff also named the County as a Defendant in this action. *See Castleberry v. Cuyahoga Cnty.*, No. 1:20-CV-218, 2020 WL 3261097, at *2 (N.D. Ohio June 16, 2020) (dismissing the plaintiff's official capacity claims in the context of the defendant's 12(c) motion after concluding that "the official-capacity claims against the moving defendants [were] duplicative of claims brought against Cuyahoga County, and [were], therefore, superfluous"); *see also Ruffin v. Cuyahoga Cnty.*, No. 1:16-CV-640, 2016 WL 4543144, at *2 (N.D. Ohio Aug. 31, 2016) (finding that dismissal of the plaintiff's official capacity claims "is the more practical and efficient approach" given that the plaintiff also named their employer as a defendant in the case). Thus, to the extent that Plaintiff seeks to hold the individual County Defendants liable in their official capacity, the court hereby dismisses Plaintiff's official capacity

claims because they are duplicative of the claims asserted against the County.

Having dismissed Plaintiff's claims against the individual County Defendants in their official capacities, the court turns now to a discussion of the claims asserted against the County, the County Defendants in their individual capacities, and MetroHealth.

2. § 1983 Deliberate Indifference Claim (Count IV)

In Count IV, Plaintiff asserts a deliberate indifference claim against all Defendants.[4] Courts have made clear that "[t]he Eighth Amendment protection against deliberate indifference extends to pretrial detainees in state prisons by operation of the Due Process Clause of the Fourteenth Amendment." *Moderwell v. Cuyahoga Cnty.*, Ohio, No. 20-3879, 2021 WL 1897949, at *7 (6th Cir. May 12, 2021) (citing *Rouster v. County of Saginaw*, 749 F.3d 437, 446 (6th Cir. 2014)). Relevant to this case, a prison official violates a pretrial detainee's right to adequate medical treatment when he or she acts with deliberate indifference to their serious medical needs. *Troutman v. Louisville Metro Dep't of Corr.*, 979 F.3d 472, 482 (6th Cir. 2020). Under the Sixth Circuit's traditional framework, the deliberate indifference standard has both an objective and subjective component. *Id*. The objective component requires the existence of a "sufficiently serious" medical need. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). That is, "the inmate must show that he is incarcerated under conditions posing a substantial risk of harm." *Id*. The subjective component requires an inmate to show both that "an official knew of her serious medical need and that, despite

---

[4] As a result of Plaintiff's inartful drafting of the Complaint, it is unclear what theory Plaintiff intended to pursue in regard to his deliberate indifference claim in Count IV. Because Plaintiff alleges that the decedent was denied adequate medical care and because he also asserts that Defendants were deliberately indifferent to the "health and safety" of the decedent, the court construes Count IV as a claim for deliberate indifference to Plaintiff's medical needs. (Compl. ¶ 71, ECF No. 1-1.)

this knowledge, the official disregarded or responded unreasonably to that need." *Troutman*, 979 F.3d at 483. In doing so, a plaintiff "must show both that a prison official 'subjectively perceived facts from which to infer substantial risk to the prisoner' and that he 'did in fact draw the inference' but disregarded that risk." *Id*.

Defendants argue that Count IV fails as a matter of law because Plaintiff did not provide any factual allegations as to how each Defendant violated the decedent's constitutional rights. The Sixth Circuit has explained "[p]ersonal involvement is necessary to establish section 1983 liability." *Murphy v. Grenier*, 406 F. App'x 972, 974 (6th Cir. 2011); *see also Essex v. Cty. of Livingston*, 518 F. App'x 351, 357 (6th Cir. 2013) (explaining that "[w]hereas the County's liability may be premised on its policymaker's deliberate indifference, the individual defendant may be liable only upon a showing of personal involvement.") Here, a careful review of the allegations in Count IV reveals that Plaintiff does not plausibly allege facts that indicate how each Defendant was personally involved in the alleged violation of the decedent's constitutional rights.[5] Specifically, in Count IV, Plaintiff broadly asserts that all Defendants "violated 42 U.S.C. § 1983 in that [the] decedent should not have been subjected to unlawful restraint, confinement, assault and battery, and/or the denial of adequate medical care and treatment." (Compl. ¶ 71, ECF No. 1-1.) Plaintiff further alleges "[t]he conduct of these Defendants constitutes deliberate indifference to the health and safety of [the] decedent as well

---

[5] In reaching this determination, the court recognizes that Plaintiff attached two reports to his Complaint—namely, the U.S. Marshals Service Quality Assurance Report and a Cuyahoga County Inspector General's Report—which detailed the findings of an investigation of the conditions of confinement at the County Jail. While these reports identify several problems at the County Jail, they do not relieve Plaintiff of his obligation to allege plausible facts sufficient to show how each of the moving Defendants were personally involved in the alleged constitutional violation.

as conduct which shocks the conscience and is intolerable in a civilized society." (*Id*.) These allegations, taken together with the allegations preceding Count IV, are insufficient to show personal involvement in the alleged constitutional violation and fail to address the objective and subjective prongs of the deliberate indifferent test. *See Moderwell v. Cuyahoga Cnty.*, No. 1:19-CV-613, 2020 WL 4726456, at *4 (N.D. Ohio Aug. 14, 2020) (dismissing the plaintiff's excessive force claim against certain defendants after determining that the plaintiff's allegations of excessive force were "too thin and generalized" because the plaintiff failed to allege how the defendants were particularly involved in the alleged constitutional violation). Because Plaintiff's Complaint fails to state with particularity the specific actions or inactions as to each Defendant, the court grants Defendants' Motion to Dismiss Count IV.

### 3. *Monell* Liability (Counts V, VI, and VII)

In Count V, Plaintiff brings a claim under *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978), asserting that the County, MetroHealth, and Defendants Budish, Leiken, Taylor, Pinkney, Mills, and Ivey are liable for their roles in establishing and maintaining "policies, practices, customs, and habits," as it relates to the conditions of confinement, the alleged use of force against inmates, the alleged deliberate indifference to the medical needs of inmates, and the alleged denial of inmates' civil rights at the County Jail. (Compl. ¶¶ 73–78, ECF No. 1-1.) As an initial matter, the court finds that, to the extent that Plaintiff seeks to hold the County Defendants liable in their individual capacities under *Monell*, Plaintiff's *Monell* claims against these Defendants fail as a matter of law. Indeed, Plaintiff's attempt to hold the Policy Defendants liable in their individual capacity under *Monell* is improper because "the raison d'etre of *Monell* is to impose liability on a *municipality* under certain circumstances—not individuals." *Phillips v. City of Cincinnati*, No. 1:18-CV-541,

2019 WL 2289277, at *6 (S.D. Ohio May 29, 2019) (emphasis in original); *see also Moderwell v. Cuyahoga Cnty.*, No. 1:19-CV-613, 2020 WL 4726458, at *3 (N.D. Ohio Aug. 14, 2020) (dismissing the plaintiff's individual capacity *Monell* allegations as a matter of law).

The court now turns to the question of whether Plaintiff pleads plausible facts sufficient to state a *Monell* claim against the County or MetroHealth with respect to Counts V, VI, and VII. Municipalities may be held liable under 42 U.S.C. § 1983 for the unconstitutional violations of their employees where the municipality's "policy or custom" was the direct cause of the violation. *Monell*, 436 U.S. at 658, 694–95. The Sixth Circuit has made clear that "[t]o properly allege a municipal liability claim, a plaintiff must adequately allege: (1) the existence of an illegal official policy or legislative enactment; (2) that an official with final decision-making authority ratified illegal actions; (3) the existence of a policy of inadequate training or supervision; or (4) the existence of a custom of tolerance of or acquiescence to federal rights violations." *D'Ambrosio v. Marino*, 747 F.3d 378, 386 (6th Cir. 2014) (citing *Burgess v. Fischer*, 735 F.3d 462, 478 (6th Cir. 2013)); *see also Sampson v. City of Cleveland*, No. 1:20-CV-741, 2020 WL 4904847, at *8 (N.D. Ohio Aug. 20, 2020) (explaining that "[f]or a *Monell* claim to be viable, the municipal action or inaction must have been the moving force behind the constitutional harm") (citing *Powers v. Hamilton Cnty. Pub. Defender Comm'n*, 501 F.3d 592, 607 (6th Cir. 2007)). However, where there is no underlying constitutional violation, a municipality cannot be held liable. *See Scott v. Clay Cnty., Tenn.*, 205 F.3d 867, 879 (6th Cir. 2000); *see also Robertson v. Lucas*, 753 F.3d 606, 622 (6th Cir. 2014) ("There can be no liability under *Monell* without an underlying constitutional violation.") Here, the Policy Defendants argue that Plaintiff's *Monell* claims fail to the extent that they are based on the alleged acts or omissions of Defendants Budish, Leiken, Taylor, Pinkney, Mills, or Ivey, because Plaintiff does not

-11-

plausibly allege that these Defendants violated the decedent's constitutional rights. Having already determined that Plaintiff has failed to plausibly allege a constitutional violation against these Defendants, the court finds Defendants' position well-taken only insofar as Plaintiff's claims are bottomed on the alleged constitutional violations of the Policy Defendants.

Before turning to Plaintiff's state law claims, the court pauses to address Plaintiff's argument that the Policy Defendants could be liable under the theory of supervisory liability.[6] The court finds that Plaintiff's argument lacks merit for two reasons. First, Plaintiff does not plausibly allege a supervisory liability claim against the Policy Defendants. Indeed, in Count IV, which is Plaintiff's only constitutional claim asserted against Defendants Budish, Leiken, Taylor, Pinkney, Mills, and Ivey in their individual capacities, Plaintiff does not plead any factual allegations relative to the question of supervisory liability. Second, as Defendants point out, Counts V, VI, and VII are *Monell* claims, and thus, Plaintiff cannot stitch together a supervisory liability claim against the Policy Defendants by merely using the allegations contained in these claims because *Monell* claims and supervisory liability claims are different claims with different legal standards.[7] *See Essex*., 518 F.

---

[6] Specifically, Plaintiff argues in his Opposition that he sufficiently alleged a supervisory liability claim against the Policy Defendants for their failure to train, supervise, and investigate as it relates to Defendant Devring's alleged violation of the decedent's constitutional rights. (Pl.'s Opp'n at PageID #684, ECF No. 39.)

[7] With respect to Plaintiff's purported supervisory liability claim, the court notes that some of the allegations in Plaintiff's *Monell* claims may be relevant to the question of supervisory liability. Specifically, in Count V, Plaintiff asserts that the Policy Defendants "were aware and acquiesced in" Defendant Devring's alleged violation of the decedent's constitutional rights. (Compl. ¶ 81, ECF No. 1-1.) And in Count VI, Plaintiff alleges that the individual County Defendants failed to exercise their authority to ensure that the County Jail was properly managed and that those in custody were safe. (*Id*. ¶¶ 102–108.) Regardless, as Defendants point out, without more, these allegations are insufficient to show personal involvement. *Compare Moderwell*, 2020 WL 4726456, at *5 (finding that the

App'x at 355 (contrasting individual capacity supervisory liability claims with *Monell* failure to train or supervise claims and noting that "a failure-to-train or supervise claim against a municipality . . . is a broader claim concerning the custom or policy of a municipality, and . . . do[es] not require direct participation in or encouragement of the specific acts [but] rather, these claims may be premised on a failure to act") (citations omitted). Because the court finds that Plaintiff fails to plausibly allege an underlying constitutional violation with respect to the acts or omissions of the Policy Defendants, the court hereby grants Defendants' Motion to Dismiss Counts V, VI, VII. However, this is not to say that Plaintiff has failed to allege a *Monell* claim against the County as he has pled a constitutional violation by Defendant Devring, which is not subject of any Motion before the Court. Furthermore, the court reads the County's Motion as only seeking judgment on these claims to the extent that they were based on the alleged constitutional violations by the Policy Defendants. (*See* County's Mot. at PageID #627, ECF No. 37 (stating that "Counts IV, V, VI and VII asserting *Monell* claims against Cuyahoga County should be dismissed to the extent they are based on alleged constitutional violations by Messrs. Budish, Leiken, Pinkney, Ivey, Taylor and/or Kenneth Mills because Plaintiff has not successfully alleged constitutional violations against said Defendants").) However, in respect to MetroHealth, the court concludes that Plaintiff has altogether failed to allege a constitutional violation of any MetroHealth employee. Thus, the *Monell* claims asserted against MetroHealth are dismissed in their entirety.

Given that the court dismissed the federal claims against the Policy Defendants, the court need not decide whether these Defendants are entitled to qualified immunity.

> plaintiff plausibly alleged a supervisory liability claim in his amended complaint where the plaintiff specifically alleged how the defendants were personally involved in the alleged constitutional violation).

-13-

**B.     State Law Claims**

    1. Supplemental Jurisdiction

Defendants Mills and Ivey argue that because Plaintiff's federal claim asserted against them fails as a matter of law, the court lacks supplemental jurisdiction over the remaining state law claims. The Sixth Circuit has stated that "[i]f there is some basis for original jurisdiction, the default assumption is that the court will exercise supplemental jurisdiction over all related claims." *Veneklase v. Bridgewater Condos, L.C.*, 670 F.3d 705, 716 (6th Cir. 2012) (citing *Campanella v. Commerce Exch. Bank*, 137 F.3d 885, 892 (6th Cir. 1998)). Although the court dismissed Plaintiff's federal claims asserted against the Policy Defendants, Plaintiff's federal claims against Defendant Devring and the County—to the extent that Plaintiff seeks to hold the County liable for Devring's conduct—remain pending. Because the court has original jurisdiction over these federal claims, the court will continue to exercise its supplemental jurisdiction over Plaintiff's state law claims.

    2. Political Subdivision Immunity

The County and MetroHealth argue that Plaintiff's state law claims should be dismissed because they are entitled to political subdivision immunity pursuant to Ohio Revised Code § 2744.02(A)(1). Under Ohio law, political subdivisions are immune from liability in a civil action for injury, death, or loss to persons allegedly caused by an act or omission of the subdivision or its employees in connection with a governmental or proprietary function. § 2744.02(A)(1). Operating a jail and providing medical services in the jail are government functions. *See Bartlett v. Cuyahoga Cnty.*, No. 1:17-CV-1796, 2018 WL 2322852, at *4 (N.D. Ohio May 22, 2018) (citing Ohio Rev. Code § 2744.01(C)(2)(h), (x)). The exceptions to immunity are: negligent operation of a motor vehicle, negligent operation of a proprietary function, failure to keep public roads in repair, injury

due to a physical defect on government property, and liability expressly imposed by the Ohio Revised Code. *See Bartlett*, 2018 WL 2322852 at *4 n.43 (citing Ohio Rev. Code § 2744.02(B)). Here, Plaintiff concedes that MetroHealth is entitled to immunity pursuant to § 2744.02(A)(1). (Pl.'s Opp'n at PageID #568, ECF No. 31.) As for the County, Plaintiff argues that the County is not entitled to political subdivision immunity, but as Defendants point out, Plaintiff fails to state which exception to political subdivision immunity would be applicable in this case. (*See* County's Reply at PageID #743, ECF No. 40.) Ohio courts have made clear that "[o]nce general immunity has been established by the political subdivision, the burden lies with the plaintiff to show that one of the recognized exceptions apply." *Maggio v. Warren*, No. 2006-T-0028, 2006 WL 3772258 at *5 (Ohio Ct. App. Dec. 22, 2006); *see also Sims v. Cleveland*, No. 92680, 2009 WL 28944550 at *3 (Ohio Ct. App. Sept. 10, 2009) (explaining that "the plaintiff must demonstrate one of the statutorily defined exceptions apply in order to proceed). Although Plaintiff did not point to any particular exception, the court pauses to briefly discuss the second exception, which deals with negligent operation of proprietary functions. The statute defines the term "proprietary function" as one that "promotes or preserves the public peace, health, safety, or welfare and that involves activities that are customarily engaged in by nongovernmental persons." § 2744.02(G)(1)(b). In addition, as another Ohio federal district court has observed, "the statute expressly states that proprietary functions are not those activities specified in O.R.C. § 2244.01(C)(2), which lists governmental functions." *Webb v. Greene Cnty. Sheriff's Off.*, 494 F. Supp. 2d 779, 798 (S.D. Ohio 2007). As explained above, the operation of jails is a government function. *See* Ohio Rev. Code § 2744.01(C)(2)(h). Consequently, the court finds that the County is entitled to statutory immunity because Plaintiff has not carried his burden to demonstrate that one of the recognized exceptions

applies to this case and because Plaintiff's claims against the County stem from the County's performance relative to the operation of the County Jail, which the statute expressly states is not a "proprietary function." Accordingly, the court hereby dismisses the state law claims asserted against the County and MetroHealth (Counts XI, XIV, XV, and XVII) as well as the claims against the individual County Defendants in their official capacities (Counts II, III, IX, X, XII, and XIII).

The individual County Defendants also argue that they are immune from Plaintiff's state law claims pursuant to Ohio Revised Code § 2744.03(A)(6). Under Ohio law, political subdivision employees are entitled to immunity unless: (1) their acts or omissions were manifestly outside the scope of their employment or official responsibilities; (2) their acts or omissions were with malicious purpose, in bad faith, or in a wanton or reckless manner[8]; or (3) civil liability is expressly imposed upon the employee by a section of the Revised Code. *King v. City of Columbus*, *Ohio*, No. 2:18-CV-1060, 2019 WL 1508279, at *3 (S.D. Ohio Apr. 5, 2019) (citing § 2744.03(A)(6)); *see also Lassen v. Lorain Cnty., Ohio*, No. 1:13-CV-1938, 2014 WL 3511010, at *8 (N.D. Ohio July 14, 2014) (explaining that "[b]y its terms, § 2744.03(A)(6) operates as a presumption of immunity . . . [and] as such, an employee cannot be held personally liable for mere negligence, but may only be

---

[8] As the Ohio Supreme Court has explained, recklessness is conduct "characterized by the conscious disregard of or indifference to a known or obvious risk of harm to another that is unreasonable under the circumstances and is substantially greater than negligent conduct." *Argabrite v. Neer*, 149 Ohio St. 3d 349, 351 (Ohio 2016). "Wanton misconduct is the failure to exercise any care toward those to whom a duty of care is owed in circumstances in which there is a great probability that harm will result." *Anderson v. Massillon*, 134 Ohio St. 3d 380, 388 (Ohio 2012). "Malicious purpose encompasses exercising 'malice,' which can be defined as the willful and intentional design to do injury, or the intention or desire to harm another, usually seriously, through conduct that is unlawful or unjustified." *Wingfield v. Cleveland*, No. 100589, 2014 WL 2932780 at *4 (Ohio Ct. App. June 26, 2014).

held liable for actions that fall into one of the [statutory] exceptions"). At issue, is whether the individual County Defendants acted with malicious purpose, in bad faith, or in a wanton or reckless manner, and thus, are not entitled to statutory immunity.

Here, as Defendants point out, Plaintiff has not plausibly alleged any specific act or omission that would constitute recklessness, wanton misconduct, bad faith, or malicious purpose with respect to each Defendant's conduct. (County's Mem. in Supp. at PageID #639–640, ECF No. 37; Def. Mills's Mem. in Supp. at PageID #501, ECF No. 23-1; Def. Ivey's Mem. in Supp. at PageID #771, ECF No. 42-1.) Because Plaintiff fails to plausibly allege how each Defendant was personally involved in the events that led to the decedent's passing and because Plaintiff has not pled plausible facts sufficient to show that these Defendants acted with the requisite mental state to overcome the presumption of immunity that § 2744.03(A)(6) provides to political subdivision employees, the court finds that the individual County Defendants are entitled to statutory immunity.

Setting aside the issue of statutory immunity, the court finds that dismissal of Plaintiff's state law claims in Counts XII and XVII is warranted. In Count XII, which is a claim under the "Ohio Civil Rights Act" asserted against the Policy Defendants, Plaintiff concedes to the dismissal of this claim. (Pl.'s Opp'n at PageID #668 n.2, ECF No. 39.) As for Count XVII, which is a claim for "vicarious liability/*respondeat* superior" against the County and MetroHealth, Defendants argue that this claim must be dismissed because it is not cognizable under federal or state law. (County's Mem. in Supp. at PageID #639–640, ECF No. 37.) Plaintiff did not address Defendants' argument with respect to Count XVII in his Opposition. The court finds Defendants' argument well-taken and hereby dismisses Counts XII and XVII.

3. Other Grounds for Dismissal

-17-

In addition to the grounds for dismissal discussed above relative to state law immunity, the court finds that several of Plaintiff's state law claims are also subject to dismissal on other grounds. In light of Plaintiff's request to amend the Complaint, the court will briefly address Defendants' alternative grounds for dismissal. Starting with Count X, which is a "Civil Liability for Criminal Acts" claim against the Policy Defendants pursuant to Ohio Revised Code § 2307.60(A)(1), the court finds that this claim is subject to dismissal because it is barred by the statute of limitations. Indeed, as Defendants point out, Ohio courts have held that claims brought under § 2307.60(A)(1) are subject to a one-year statute of limitations because the statute contemplates a penalty. *Roarty-Nugent v. Cuyahoga Cnty.*, No. 1:20-CV-1025, 2020 WL 5530354, at *6 (N.D. Ohio Sept. 15, 2020) (citing *Marquardt v. Carlton*, Case No. 1:18-CV-333, 2019 WL 1491966, *2 (N.D. Ohio Apr. 2, 2019)). Here, the criminal conduct alleged in the Complaint occurred on August 27, 2018. Plaintiff's Complaint in this case was filed on May 12, 2020. Because Plaintiff's claim was brought more than one year after the alleged criminal conduct occurred, it is barred by the one-year statute of limitations.

Moving to Count XI, which is a claim for "Intentional, Willful, Wanton, Reckless and/or Negligent Conduct" against all Defendants, the court concludes that dismissal is warranted because as another court in this district has stated "willful, wanton, and reckless conduct is not a distinct cause of action, but an element of various other causes of action." *Bradley v. City of Cleveland*, No. 1:11-CV-781, 2012 WL 775106, at *3 (N.D. Ohio Mar. 7, 2012). Because this claim is not recognized under Ohio law, it must be dismissed.

Finally, in Count XIII, Plaintiff asserts that Defendant Pinkney, as County Sheriff, is liable for the conduct of his deputies pursuant to Ohio Revised Code § 311.05. The parties dispute whether

-18-

§ 311.05 provides a cause of action or a shield of immunity to Ohio sheriffs. In full, § 311.05 states "[t]he sheriff shall only be responsible for the neglect of duty or misconduct in office of any of his deputies if he orders, has prior knowledge of, participates in, acts in reckless disregard of, or ratifies the neglect of duty or misconduct in office of the deputy." § 311.05. After reviewing the relevant case law, the court finds that § 311.05 provides a cause of action allowing plaintiffs to hold sheriffs liable for the tortious acts of their deputies. *See Coley v. Lucas Cnty., Ohio*, 799 F.3d 530, 544 (6th Cir. 2015) (finding that the "[p]laintiffs have thus alleged facts sufficient to state a claim that [the defendant sheriff] 'ratified' the conduct of his subordinates and therefore is potentially officially liable under Ohio Rev. Code § 311.05"). However, as explained above, this claim is still subject to dismissal because Plaintiff has not pled sufficient facts to show that Defendant Pinkney is not entitled to statutory immunity.

### IV. CONCLUSION

For the foregoing reasons, the court grants Defendant Mills's Motion to Dismiss (ECF No. 23), and hereby dismisses Plaintiff's claims asserted against Mills in his individual capacity; grants Defendant MetroHealth's Motion (ECF No. 25), and hereby dismisses Plaintiff's claims asserted against MetroHealth as well as any agents or employees of MetroHealth in their individual or official capacities; grants the County's Motion (ECF No. 37), and hereby dismisses the following claims: (1) Plaintiff's official capacity claims against the individual County Defendants; (2) Plaintiff's federal claims in Counts IV, V, VI, VII, to the extent that such claims are based on the alleged constitutional violations of the Policy Defendants; and (3) Plaintiff's state law claims in Counts II, III, IX, X, XI, XII, XIII, XIV, XV, and XVII, to the extent that these claims are asserted against the County or the Policy Defendants; and grants Defendant Ivey's Motion (ECF No. 42), and hereby dismisses Plaintiff's claims asserted against Ivey in his individual capacity.

-20-

The court hereby sets a telephonic status conference in the within case with counsel for the parties on October 14, 2021, at 10:30 a.m. Dial-in information will be sent by separate e-mail.

IT IS SO ORDERED.

*/s/ SOLOMON OLIVER, JR.*
UNITED STATES DISTRICT JUDGE

September 22 2021